| Fill in this information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | KARI | L. | KONTOR |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: District of ARIZONA | | | |
| Case number (If known) | 22-03856 | | |

Official Form 427
## Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

| 1. Who is the creditor? | Bridgecrest Acceptance Corporation |
|---|---|
| | Name of the creditor |
| 2. How much is the debt? | On the date that the bankruptcy case is filed $17,600.94 |
| | To be paid under the reaffirmation agreement $17,600.94 |
| | subject to the terms of the reaffirmed pre-petition loan documents. Pay-off as of 06/15/2022 |
| | $526.35 per month for 55 months (if fixed interest rate) or until paid as per the terms of the reaffirmed pre-petition loan document (on the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable). *See additional terms at end of cover sheet, if applicable. |
| 3. What is the Annual Percentage Rate (APR) of Interest? (See Bankruptcy Code § 524(k)(3)(E).) | Before the bankruptcy case was filed 24.25% |
| | Under the reaffirmation agreement 24.25% ☒ Fixed Rate ☐ Adjustable Rate |
| 4. Does collateral secure the debt? | ☐ No ☒ Yes. Describe the collateral. 2017 Nissan Rogue Sport Utility 4D SV 2.0L I4 VIN: JN1BJ1CP5HW029512 Current market value $16,833.00 |
| 5. Does the creditor assert that the debt is nondischargeable? | ☒ No ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable. |

| 6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts. | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| | 6a. Combined monthly income from line 12 of Schedule I | $ 5,020.17 | 6e. Monthly income from all sources after payroll deductions | $ 5020.17 |
| | 6b. Monthly expenses from line 22c of Schedule J | $ 5,390.03 | 6f. Monthly expenses | $ 5390.03 |
| | 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | $ 0 |
| | 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ [-369.86] | 6h. Present net monthly income Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ (-369.86) |

Official Form 427    Cover Sheet for Reaffirmation Agreement    Page 1

Debtor 1  KARI  L.  KONTOR  Case number (if known) 22-03856
First Name  Middle Name  Last Name

| 7. Are the income amounts on lines 6a and 6e different? | ☒ No ☐ Yes. | Explain why they are different and complete line 10. _____ |
|---|---|---|
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No ☐ Yes. | Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No ☒ Yes. | A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.  *I need the vehicle to support my family - to get to & from work, grocery stores & take my son to & from school. I am going to prioritize this expense over other expenses.* |

**10. Debtor's Certification about lines 7-9**

If any answer on lines 7-9 is *Yes*, the debtor must sign here.

If all the answers on lines 7-9 are *No*, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

X _Kari L. Kontor_     X _____
Signature of Debtor 1      Signature of Debtor 2 (Spouse Only in a Joint Case)

| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☒ No ☐ Yes. | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement? ☒ No ☐ Yes. |
|---|---|---|

## Part 2:  Sign Here

Whoever fills out this form must sign here.   I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

X _/s/_     Date _07/20/2022_
              MM/DD/YYYY

Amitkumar Sharma
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

**Additional Terms:**

This form 427 has been modified by AIS in conformance with FED. R. BANKR. P. 4008 and compliance with 11 U.S.C. § 524(c). This Form 427, as modified, is substantially similar to Official Form 427.

Official Form 427     Cover Sheet for Reaffirmation Agreement     Page 2

> Check one.
> ☑ **Presumption of Undue Hardship**
> ☐ No Presumption of Undue Hardship
>
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re   KARI L. KONTOR                          Case No.   22-03856
            Debtor(s)                           Chapter    7

## REAFFIRMATION DOCUMENTS

Name of Creditor: Bridgecrest Acceptance Corporation

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.

A. Brief description of the original agreement being reaffirmed: Automobile

B. *AMOUNT REAFFIRMED:* $17,600.94

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 06/21/2022, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 24.25%.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☒ Fixed rate   ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒ $242.93 Bi-Weekly for 120 payments starting on June 24, 2022.

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

Description:          2017 Nissan Rogue Sport Utility 4D SV 2.0L I4    VIN: JN1BJ1CP5HW029512
Current Market Value  $16,833.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?    $19,560.70
☐ No.  What was the amount of the original loan?          $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $17,600.94 | $17,600.94 |
| Annual Percentage Rate | 24.25% | 24.25% |
| Bi-Weekly Payment | $242.93 | $242.93 |

**Unless otherwise changed in this reaffirmation agreement, I (we) reaffirm all other terms and conditions of the credit agreement. Any changes to the credit agreement contained in this reaffirmation agreement will not be effective if this reaffirmation agreement is rescinded or disapproved by the court.**

The terms stated herein are contingent upon the execution and filing of the reaffirmation agreement prior to the discharge or, if applicable, approval of the reaffirmation agreement by the court. Any loan extensions, modifications, late payments, payments to principal or other accruals of interest may alter the contractual paid in full date or final payment amount otherwise set forth in this reaffirmation agreement or the reaffirmation agreement cover sheet.

H.☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

    Check one. ☐ Yes ☑ No

B. Is the creditor a credit union?

    Check one. ☐ Yes ☑ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:
   a. Monthly income from all sources after payroll deductions (take-home pay plus any other income)    $ 5020.17
   b. Monthly expenses (including all reaffirmed debts except this one)    $ 5390.03
   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ (-369.86)
   d. Amount of monthly payment required for this reaffirmed debt    $ 526.35

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe this reaffirmation agreement will not impose an undue hardship on me or my dependents because:

   Check one of the two statements below, if applicable:

   ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: _I need this vehicle to support my family - to get to & from work, grocery store, + take my son to + from school. I am going to prioritize this expense over other expenses._

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes", check the following statement, if applicable:

    ☐ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.
(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;
(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;
(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and
(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date: 7·4·2022         Signature: _Kari L. Kontor_
                                 Kari L Kontor - *Debtor*

Date: _____         Signature: _____
                                 *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor    Bridgecrest Acceptance Corporation          AIS Portfolio Services, LP
                                                        4515 N Santa Fe Ave
                                                        Oklahoma City, OK 73118

Amitkumar Sharma    *Print Name*                        Address
AIS Portfolio Services, LP Bankruptcy
Servicer for
Bridgecrest Acceptance Corporation                      [signature]              07/20/2022
       *Print Name of Representative*                     *Signature*              *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____    Signature of Debtor's Attorney: _____

                 Print Name of Debtor's Attorney: SHAWN L STONE

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Please send any Notice of Rescission of this Reaffirmation Agreement via physical & electronic mail to the following addresses for quicker processing:

AIS Portfolio Services, LP
4515 N Santa Fe Ave
Oklahoma City, OK 73118
ECFNotices@aisinfo.com

6. **When will this reaffirmation agreement be effective?**

    a. If you *were represented* by an attorney during the negotiation of your reaffirmation agreement and

    > i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

    > ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

\* This form 2400A has been modified by AIS Portfolio Services, LP in conformance with FED. R. BANKR. P. 4008 and compliance with 11 U.S.C. § 524(c). This Form 2400A, as modified, is substantially similar to Official Form 2400A.

Form 2400B (12/15)                                                                                             Page 10

## PART VI. MOTION FOR COURT APPROVAL

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA

In re   KARI L. KONTOR                                      Case No.   22-03856
            Debtor(s)                                       Chapter    7

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because *(provide any additional relevant reasons the court should consider):*

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes):*

☑ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during course of the negotiation of the reaffirmation agreement)

☑ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form 2400A, Reaffirmation Documents)

Signed: *Kari L. Kontor*
          Kari L Kontor

          _____
          Joint Debtor, if any

Date:   7. 6. 2022

\* This form 2400A has been modified by AIS Portfolio Services, LP in conformance with FED. R. BANKR. P. 4008 and compliance with 11 U.S.C. § 524(c). This Form 2400A, as modified, is substantially similar to Official Form 2400A.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

# SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT

REPRINT DATE: 3/6/2021     SALES DATE: 03/06/2021

| Buyer (and Co-Buyer) Name and Address | Dealer/Creditor Name and Address |
|---|---|
| Kari Lynn Kontor<br>14109 N 83rd Ave Apt 384<br>Peoria, AZ 85381-4774 | DRIVETIME CARSALES COMPANY, LLC  DBA: DRIVETIME CENTRAL PHOENIX<br>2143 W CAMELBACK RD<br>PHOENIX, AZ 85015-3444 |

You, the Buyer (and Co-Buyer, if any) shown above, agree to buy the motor vehicle described below (the "Vehicle") on credit subject to the terms and conditions of this contract and security agreement (the "Contract"). By signing below, you represent that you have been quoted only one cash price for the Vehicle. "We", "us" and "our" refer to the Dealer shown above and any person to which we may transfer or assign the Contract.

| New/Used | Model Year and Make | Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2017 Nissan | Rogue Sport | JN1BJ1CP5HW029512 | [X] Personal  [ ] Agricultural<br>[ ] Business |
| Trade-In: | N/A<br>Year | N/A<br>Make | | N/A<br>Model |

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all scheduled payments | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 800.00 |
|---|---|---|---|---|
| 24.251 % | $ 17,363.50 | $ 19,560.70 | $ 36,924.20 | $ 37,724.20 |

### Payment Schedule

| Number of Payments | Amount of Each Payment | When Payments Are Due | |
|---|---|---|---|
| 151 | $242.93 | BiWeekly beginning | 04/02/2021 |
| 1 | $241.77 | Ending | 01/15/2027 |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.

**Late Payment:** You must pay a late charge on the part of each payment not made within 10 days after the date the payment is due. The charge is 5% of the delinquent amount.

**Security Interest:** You are giving a security interest in the Vehicle being purchased. Please read this Contract for additional information on security interests, non-payment, default, and our right to require repayment of your debt in full before the scheduled maturity date and prepayment refunds and penalties.

## FOR USED VEHICLES ONLY

**ATTENTION PURCHASER:** Sign here only if the dealer told you that this vehicle has the following problem(s) and that you agree to buy the vehicle on those terms:

1. _____
2. _____
3. _____

| | 03/06/2021 | | 03/06/2021 |
|---|---|---|---|
| Buyer | Date | Co-Buyer | Date |

**THE SELLER HEREBY WARRANTS THAT THIS VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.**

The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Mar 08, 2021 05:16:25 AM.

Demo Watermark (http://www.imagepdf.com/)

| INSURANCE |
|---|
| YOU MAY OBTAIN INSURANCE ON THE VEHICLE FROM A PERSON OF YOUR CHOICE THAT IS AUTHORIZED TO SELL SUCH INSURANCE AND IS ACCEPTABLE TO US. |
| LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED. |

| NOTICES REQUIRED BY FEDERAL LAW |
|---|
| Used motor vehicle Buyers Guide. If you are buying a used vehicle with this Contract, federal regulations may require a special Buyers Guide to be displayed on the window of the Vehicle. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF THE SALE. |
| NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. |

### ITEMIZATION OF AMOUNT FINANCED

| # | Description | | Amount | |
|---|---|---|---|---|
| 1 | **Cash Price** (Including sales tax of $1,144.69 any accessories, their installation, and taxes) | | $14,539.69 | (1) |
| 2 | **Down Payment** | | | |
| | (2a) Cash Down Payment | | $800.00 | (2a) |
| | (2b) Trade-In Allowance | | $0.00 | (2b) |
| | (2c) Trade-In Payoff | | $0.00 | (2c) |
| | Payoff To: N/A | | | |
| | (2d) Net Trade-In (Description Page 1) (2b minus 2c) | | $0.00 | (2d) |
| | **Total Down Payment (2a plus 2d)** | | $800.00 | (2) |
| 3 | **Unpaid Balance of Cash Price** (1 minus 2) | | $13,739.69 | (3) |
| 4 | **Amounts Paid to Others on Your Behalf** | | | |
| | (a) To Public Officials | | | |
| | License, title & registration fees | | $237.01 | |
| | (b) **Other Charges:** | | | |
| | **To: DriveTime | For Documentation Fee | $299.00 | |
| | **To: DriveTime | For SilverRock Included 30 Day | $0.00 | |
| | **To: DriveTime | For SilverRock DriveCare Powertrain | $3,555.00 | |
| | **To: DriveTime | For SilverRock GAP Coverage | $1,035.00 | |
| | **To: DriveTime | For GoldStarGPS (3 yrs) plus | $695.00 | |
| | **Total Amounts Paid to Others on Your Behalf (a plus b)** | | $5,821.01 | (4) |
| | ** Dealer may retain or receive a portion of these amounts paid to others, except those fees paid to public officials. | | | |
| 5 | **Balance of Cash Price and Other Charges** (3 plus 4) | | $19,560.70 | (5) |
| 6 | **Amount Financed** | | $19,560.70 | (6) |

**Promise to Pay and Payment Terms:** You promise to pay us the Amount Financed, plus Finance Charges accruing on the unpaid balance at the rate of **24.251**% per year (the "Contract Rate") from today's date until paid in full. Finance charges accrue on a daily simple interest basis. As outlined above in the Truth In Lending Disclosures you agree to pay this Contract according to the payment schedule by paying the amount stated in the Total of Payments box, or a greater amount. You also agree to pay the late charge shown above and any additional amounts according to the terms and conditions of this Contract.

**General Terms; Payments:** You have been given the opportunity to purchase the Vehicle and any other products and services identified in this Contract for the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any other products or services plus the Finance Charges if you buy them over time. You agreed to purchase the items over time. The Total Sale Price in the TRUTH IN LENDING DISCLOSURES assumes that you will make all payments as scheduled. The actual amount you will pay may be more or less depending on your payment record. You may prepay this Contract at any time without penalty.

**Security Interest:** To secure your obligations, you give us a "first priority" security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle. You also agree to give us a security interest in all money or goods received for the Vehicle and all insurance premiums, service and other contracts we finance. The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract. You agree a "first priority" security interest is a security interest before any other party's lien, claim, interest or right in or to the Vehicle. You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent. We reserve our right to setoff insurance proceeds or excess amounts of estimated official fees and taxes that we may receive against the principal amount of what you owe us under the Contract to the extent not prohibited by applicable law.

**Waiver:** By giving us a security interest in the Vehicle, you waive all rights provided by law to claim the Vehicle exempt from legal process.

**Notice:** the following information applies if this Contract is secured by a motor vehicle, as that term may be defined by applicable Arizona law:

It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default we send you will be mailed to your address on this Contract. It is your responsibility to tell us your new address if it changes. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if the defendant has a prior criminal record. The court may also impose a fine of no more than $150,000.

The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Mar 08, 2021 05:16:25 AM.

**Finance Charges:** This is a simple interest Contract. The finance charges you pay will depend on how you make your payments. Your actual finance charges may be more than the disclosed Finance Charges if you make your payments late or in less than the scheduled amount. We will apply payments to late charges, finance charges and to the unpaid balance of the Contract in any manner we choose unless we are required by law to apply payments in a particular order. Finance charges are earned by applying the Contract Rate to the unpaid balance of the Contract for the time such balance is owed, subject to the finance charge free period, if any, described on the first page of this Contract.

**Use of Vehicle:** You must take care of the Vehicle. You must obey all laws in using it. You may use the Vehicle for any lawful purposes, other than to provide ride sharing services or for any other commercial purpose. You must keep the Vehicle in your possession at the Buyer's address shown above, unless we approve another address in writing. You may not sell or transfer any rights in the Vehicle without our prior written consent. You must keep it free from the claims of others. You will not take it out of the United States without our prior written consent. You will immediately tell us of any change in your address or the address where the Vehicle is regularly kept. You agree not to add to the Vehicle any accessories, equipment or any other property in which any other person has an ownership or security interest.

**Warranties Seller Disclaims:** Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, **the Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.** This provision does not affect any warranties covering the vehicle or parts thereof that the Vehicle manufacturer or parts supplier may provide. Only the manufacturer or supplier shall be liable for performance under their warranties.

**Vehicle Insurance:** You must insure yourself and us for the term of this Contract against loss of or damage to the Vehicle with a policy in the Buyer's name. You must maintain comprehensive fire, theft and collision coverage, insuring the Vehicle in an amount acceptable to us, name us as loss payee and provide whatever evidence of insurance we request. We must approve the type and amount of insurance that you obtain. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. If you do not maintain the required insurance, we may buy substantially similar coverage at your expense. We may add the cost of such insurance to your obligations due under this Contract and/or collect those costs separately from you. You agree to pay such costs either upon our demand or in installments, subject to a finance charge at the Contract Rate, if we elect to apply a finance charge. The insurance we buy may, at our option, protect only our interest, or both your interest and ours. **Insurance we buy may cost substantially more than insurance you buy.** We will cancel the insurance we buy if you give us satisfactory proof of insurance reasonably acceptable to us. **Whether or not the Vehicle is insured, you will pay us all you owe under this Contract even if the Vehicle is lost, damaged beyond repair, or destroyed.**

You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Returned Check Charge:** If you make any payment required by this Contract with a check that is returned or dishonored, you agree to pay a charge equal to $25 plus the amount of any fees charged to the holder of the instrument by a bank or financial institution as a result of the instrument not being honored, after we provide you with any notice that may be required by applicable law. If the fee is not paid when due, we may add this fee to the unpaid balance of this Contract.

**Default:** You will be in default if any one of the following occurs (except as may be prohibited by law):
1. You fail to make any payment due under this Contract, including any down payment, in full when such payment is due.
2. We are unable to obtain a first priority security interest in the Vehicle.
3. You give another person a security interest in the Vehicle without our consent.
4. You fail to obtain or maintain insurance on the Vehicle as required by this Contract
5. You gave us false or misleading information on your application relating to this Contract, if we cannot verify any information that you have provided us, if any information you provided to us is false, if we discover a material adverse change in such information during the review process, or if you do not cooperate in the verification and review process described below.
6. You fail to keep any other agreement or promise you made in this Contract.
7. You die, become incompetent, generally fail to pay your debts when they become due or if you file a bankruptcy petition or if one is filed against you.
8. The Vehicle is lost, **damaged beyond repair, or destroyed** or any other event occurs that causes us to believe that our prospects for payment or realization upon the Vehicle are impaired.

If you are in default, we may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this Contract (the entire unpaid balance). If as a consequence of your default we require that you pay the entire unpaid balance, we will charge you interest at the Contract Rate on the entire unpaid balance from the date of our notice to you demanding payment of the entire unpaid balance. Additionally, we may take back (repossess) the Vehicle. We may also take items of personal property found in the Vehicle when we take back the Vehicle and hold them for you. If, after providing you with notice of our intent to dispose of such personal property as required by law and after allowing you time to claim the property as required by applicable law you do not claim your personal property, we will dispose of the personal property in a commercially reasonable manner.

We may cancel any insurance or other products or services you have purchased in this Contract and apply any refunds we receive to the amount you owe. You agree to pay any attorneys' fees if this Contract is referred to an attorney for collection who is not our salaried employee and other collection costs we incur at any time in collecting amounts you owe under this Contract, including during any bankruptcy proceedings or upon any appeal.

If we take back the Vehicle, we will sell it unless you exercise any right to cure or redeem the Vehicle that you may have under state law. The sale proceeds, less the actual amounts we pay for retaking, holding, preparing for disposition, processing and disposing of the Vehicle, and less our attorneys' fees and legal costs to the extent such costs, fees and expenses are permitted by applicable law, will be used to pay the amount you owe on this Contract. Any money left will be paid to you unless the law requires that we pay it to someone else. If the sale proceeds are not enough to pay off this Contract and costs, and we have complied with the applicable notice requirements, you will be obligated to pay us what is still owed (the deficiency) to the extent permitted by law.

We can, without notice, delay enforcing our rights or exercise only part of them without losing them, waive a right we have without waiving it for subsequent opportunities to exercise that right, and waive a right we have as to one Buyer without waiving it as to the other(s). You also expressly waive demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate and notice of acceleration.

The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Mar 08, 2021 05:16:25 AM.

**Assignment:** You may not assign your rights under this Contract without our permission. We may sell or assign our rights in this Contract without your permission. We may sell or assign this Contract for an amount that is more than or less than the Amount Financed.

**General:** Any change in this Contract must be written and signed by you and us. The law of the state of the Dealer's place of business shown in this Contract applies to this Contract. If that law does not allow all the agreements in this Contract, the ones that are not allowed will be void. The rest of this Contract will still be good.

**After-Sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You have agreed to cooperate with the after-sale review and verification process.

**Limitation on Damages:** Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the Vehicle to you if it is beyond our control, not our fault or we are not negligent.

**References/Credit Reports:** We may contact your employer or your references to verify the information you provided to us in your application or in connection with this Contract. We may also contact your employer or your references if we are unable to locate you. The servicer of this Contract may also do so. Federal or state law may limit these contacts. You also consent to us or a servicer, obtaining a credit report(s) in connection with the servicing of the Contract.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither of us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the Vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the Vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the completion of the sale.

**Liability Insurance Required:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Contract. You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Record Retention:** You agree that we may maintain documents and records related to the Vehicle and the Contract electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding relating to the Vehicle.

**Broker Fees:** THIS TRANSACTION IS NOT SUBJECT TO A FEE RECEIVED BY A BROKER FROM THE SELLING MOTOR VEHICLE DEALER (DEALER/CREDITOR).

**Assignment of Dealer:** For value received, Dealer hereby transfers to BRIDGECREST ACCEPTANCE CORPORATION ("Assignee") all of its right, title, and interest in the Contract and the Vehicle. This transfer and assignment is made pursuant to and is subject to any Agreement between Dealer and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Dealer.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is a part of this Contract.

**Communication Consent:** You agree that we may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. By providing the number of your land line, cell phone or other wireless device and your email address, you expressly consent and agree that we may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing or collection of any account that you may establish with us or for other informational purposes related to your account (each a "Communication"). You agree that we may send you a Communication at any land line, cell phone, or email address publically available and associated with you and that you agree we may contact you at now or in the future. You also agree that we may include your personal information in a Communication. You understand email and text are not secure means of communication and that there is a possibility a third party may see our email or text to you. We will not charge you for a Communication, but your service provider may. You acknowledge and confirm that you have the authority to provide this consent because you are either the subscriber of the telephone number(s) and email address(es) or you are the non-subscriber customary user who has authority to provide this consent. If you change your telephone number(s) or email address, you agree to contact us immediately to advise us of any such change. In addition, you understand and agree we may always communicate with you in any manner permissible by law that does not require your prior consent.

**NOTICE TO THE BUYER:**

**(1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.**
**(2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.**

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT. YOU ALSO ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF ALL PAGES OF THIS CONTRACT AT THE TIME YOU SIGN IT.**

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.**

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

X ┌─DocuSigned by:─────────┐          X  ┌──────────────────────────┐
  │ R Kari Kontos ales Contract │        │ Retail Sales Contract │
  │ 32FBC8DB5D59469...     │          │                          │
  └────────────────────────┘          └──────────────────────────┘
**Buyer Signs**                         **Co-Buyer Signs**

By signing below, the Dealer/Creditor accepts this Contract

X  *Clay B. Scheitzach*
_____
**Dealer**

**Dealer is regulated and complaints concerning this contract may be addressed to: ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS, 2910 N 44th Street, Suite 310, Phoenix, AZ 85018 - Telephone (602) 255-4421.**

Demo Watermark (http://www.imagepdf.com/) [repeated]
Copy of Original
Page 5 of 5
The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Mar 08, 2021 05:16:25 AM.

# ARIZONA CERTIFICATE OF TITLE


Motor Vehicle Division

Inventory Control

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| JN1BJ1CP5HW029512 | 2017 | NISS | Rogue Sport | 4DSW |

BRIDGECREST ACCEPTANCE CORPORATION
PO BOX 2997
PHOENIX, AZ 85062

| Title Number | | Issue Date | Odometer Reading (no tenths) | |
|---|---|---|---|---|
| A003373416 | State | 3/24/2021 | 67256 | Actual |
| Previous Title Number | AZ | 1/8/2021 | | |

Arizona Brands

Other States With Brands

Owners

Kari Lynn Kontor
1110 Turtle Creek Dr
Apt 130
Naples, FL 34110-2207

Owner

Lienholder(s) as of the print date and lien effective date. (Additional liens may exist. Check Vehicle Title Status on https://azmvdnow.az.gov to find all current liens.)

BRIDGECREST ACCEPTANCE CORPORATION
Po Box 2997
Phoenix, AZ 85062-2997

VOID WITHOUT EMBOSSED SEAL ALTERED OR ERASED